FERDINAND WESTHEIMER AND OTHERS, PLAINTIFFS IN ERROR, v. D. A. PHILLIPS AND OTHERS, DEFENDANTS IN ERROR.

**Mortgage Foreclosure:** DEFENSE. Defendant D. A. P. was indebted to plaintiffs on notes and book account in the sum of $539.25, most of which was past due, and which he was unable to pay. The agent of the plaintiffs agreed that plaintiffs would lend defendant $250. Defendant executed and delivered to plaintiffs his four notes, amounting in the aggregate to $789.25, and, with his wife, the other defendant, executed and delivered to plaintiffs a mortgage to secure said notes, and "if the money was not sent the notes and mortgage were to be returned." Plaintiffs refused to advance the $250 promised by their agent, whereupon defendant demanded the return of the notes and mortgage, which was not done. Afterwards defendant received the old notes from the plaintiffs, made two considerable payments on one of the new notes, and demanded that the $250 contained in the said new notes over and above what he owed plaintiffs be divided into four equal parts, and one part thereof

Westheimer v. Phillips.

credited on each of the new notes, which was done. On suit to foreclose the mortgage, *held*, that by accepting the return and delivery to him of the old notes, making two considerable payments on the new notes, and procuring the credit of the $250 on them, the defendant waived his right to the return of the said notes and mortgage, and that the same remain in force.

ERROR to the district court of Fillmore county. It was an action for the foreclosure of a mortgage given as security for the payment of certain notes, tried before WEAVER, J., who rendered a judgment upon the notes in favor of plaintiffs for the sum of $563.31 and costs, but refused to "enforce said mortgage, it being against equity and conscience." Plaintiffs thereupon brought the cause here by petition in error.

*James Laird* and *B. F. Smith*, for plaintiffs in error.

*Brown & Marshall* and *Will R. Gaylord*, for defendants in error.

COBB, J.

The court below found the following facts:

I. That at the time the notes and mortgage in question were executed, the defendant, D. A. Phillips, was indebted by notes and account to the plaintiffs, Westheimer Brothers, in the sum of $539.25.

II. That the notes and mortgage were executed for $250.00 more than was due from D. A. Phillips to plaintiff.

III. That plaintiffs agreed with the defendant, D. A. Phillips, at the time the mortgage and notes were executed, that in consideration of defendants securing the indebtedness already existing and the further sum of $250.00, that the plaintiffs would loan to defendant, D. A. Phillips, the sum of $250.00.

IV. That defendant, D. A. Phillips, made the mortgage in question with the express understanding

aforesaid, with the agent of the plaintiffs, that he, Phillips, was to receive a loan of $250.00, and that the promise of the $250.00 was the sole moving cause and consideration for the making of the mortgage.

V.    That plaintiffs never furnished the $250.00 to defendant, D. A. Phillips, though urgently requested to do so.

VI.    That plaintiffs refused to ratify the contract made between their agent and D. A. Phillips.

VII.    That plaintiffs endorsed $250.00 on said notes, said endorsement bearing even date with the making of said notes.    And that said endorsements were made to cover the amount said plaintiffs were to furnish.

VIII.    That defendant, D. A. Phillips, paid plaintiffs on his indebtedness $55 on the 12th of December, 1876, which, with the knowledge and without the objection of said D. A. Phillips, was endorsed on one of the notes sued on.

IX.    That D. A. Phillips, on the 1st day of March, 1877, sent plaintiffs $85.00, with orders to endorse the same on one of the notes sued herein, and that said amount was endorsed as requested.

X.    That there is due plaintiffs at this date, on said notes, $563.31, and that, as a matter of law, plaintiffs are entitled to judgment for that amount.

XI.    That it was the express agreement and understanding between the agent of the plaintiffs and the defendant, D. A. Phillips, at the time the mortgage herein was executed, that the said mortgage should not be enforced except upon the payment by plaintiffs to defendant, D. A. Phillips, of the sum of $250.00, and said amount has never been paid.

The point on which I think this case turns is that considered by the district court in the eleventh finding. But two witnesses testified as to the facts and circumstances under which the notes and mortgage, upon

which the suit was brought, were made and delivered— Jacob Westheimer, agent of the plaintiffs, and the defendant, D. A. Phillips, himself.

The testimony of Mr. Phillips on that point is as follows :

Q. State what was said the night before?

A. He (Jacob Westheimer) came into the store and asked how I was getting along. I don't know what the reply was to the question exactly.

Q. Give the substance if you can?

A. I told him business was dull. I think he called me down at the soda fountain and told me he had a proposition to make me. Something to help me out. After I went into the office he stated his proposition.

Q. What was it?

A. His proposition was to extend my time on what book account and notes were due, or all I owed them, and that he would extend the time and loan me two or three hundred dollars. Give all the time I asked for on the old account and loan me some money, as one of the Westheimer Brothers had died and left a large estate, and the house just as soon I would have the money at a reasonable interest as any one else, and this proposition would help me out.

Q. On what terms would he do that?

A. On the terms that I would secure him.

Q. For what?

A. For the account due for the old indebtedness of two or three hundred dollars.

Q. Did you settle then the amount he was to advance? State what further was said.

A. I told him I would consider the matter and let him know in the morning.

Q. What was done in the morning? Did he come to the store that day, and what did he say?

A. He came to the store and I told him I would

accept the proposition, and then we had the papers made out, the mortgage drawn, and the notes drawn. We figured the amount, and the notes and mortgage were drawn in the morning.

Q. Was there anything further about these notes and mortgage before they were executed, between you and Mr. Westheimer, as to any conditions on which you executed them? Why the notes were sent up to the house? (Objected to by plaintiffs as incompetent, and calling for a conclusion. Overruled and objection noted.)

A. The notes were to be sent into the house and the mortgage sent to Geneva for record, and on receipt he was to send me $250.00. That was the amount agreed on.

Q. What did you do with the notes and mortgage?

A. Gave them to Mr. Westheimer.

\*        \*        \*        \*        \*        \*

Q. Go on and tell what was to be done; was there anything said in case they did not send the money? (Objected to by plaintiffs as incompetent. Overruled and exception noted.)

A. The proposition was that the money was to be sent. If the money was not sent, the notes and mortgage were to be returned.

\*        \*        \*        \*

Q. Was the money sent?

A. No, sir.

The testimony of Jacob Westheimer directly upon the point under consideration was as follows:

Q. Mr. Westheimer, what was said about the extension of time you speak of, and what was said between you parties there?

A. What time do you refer to?

Q. The time of the making and delivering of the notes and mortgage, the 14th of March?

A.   I came along in the usual course of business and asked that money be paid.

Q.   What did Mr. Phillips say?

A.   He could not pay me.

Q.   Give us an account of the transaction.

A.   Mr. Phillips expressed his inability to pay me, and as I stated before, he wanted time, and one of us, I don't know which one, broached the subject of giving security.

Q.   What I desire to get at is just this, I want to know what the condition was of $250.00 over value, that the notes call for?

Objected to by def'ts counsel.   Objection overruled and exception noted.

A.   The $250.00 as Mr. Phillips represented to me, and as I believe I satisfied myself from the records, was requisite to clear the property of any incumbrance then existing, and I wanted to get the first mortgage. There should be no preceding lien on the property.   I don't remember anything further about it.

Q.   State what you said to him about furnishing the money.

A.   I told him that the firms were administrators of the estate of a brother of theirs, and might have money in that, and might advance him to that amount.

Q.   State what was said or agreed about the delivery of this mortgage and these notes?

Objected to by def'ts.

Q.   State what was said and done in that connection?

A.   The notes and mortgage were executed and the notes were delivered to me and I kept possession of them.   The mortgage I think was handed to me, and I think I handed it back to Mr. Phillips.   My recollection is, that we came down together and filed it for record.   There was no talk between us that in a cer-

tain event the mortgage should be null and void. Either Mr. Phillips or myself gave orders to the recorder of deeds to forward it to my house; I don't know who gave the instructions.

Q.   That was to forward it to the plaintiff's?

A.   My house, Westheimer Brothers, St. Jo.

Q.   What did Phillips say when he delivered that mortgage to you, if anything?

A.   I don't remember of anything particularly, that I can recollect that he told me now.   Nor do I know that Mr Phillips himself handed me the mortgage.

Q.   Mr. Westheimer, tell the court where it was he delivered this mortgage to you, if he did deliver it?

Objected to.   Objection overruled and exception noted.

A.   He delivered the notes and I think the mortgage to me, at the time they were executed at Mr. Gaylord's office.

Q.   Did he deliver them both together?

A.   I think he did.

Q.   What did he say right there at that time?

A.   I cannot recollect anything he said in particular.

Q.   Was you present to the best of your recollection when the mortgage was delivered down here to the clerk?

A.   I think I was.

Q.   Did you hear what was said?

A.   I believe I did.

Q.   What did he say at the time he delivered that to the clerk?

A.   As I stated before I am not positive he handed the mortgage to the clerk, whether Phillips or myself handed it.   I do not remember of anything said further than that the mortgage should be recorded and forwarded to Westheimer Brothers, St. Joe, Mo.

   *  *  *

· Q. What was to be done with the mortgage and notes in case you did not get the $250.00?

Objected to, overruled, exception noted.

A. There was nothing said in the event the $250 was not forthcoming, that the mortgage should be null and void, and I don't remember what words passed as to how the amount which was to be sent if not forthcoming, how it should be credited, I don't remember.

I have thus quoted at tedious length all of the testimony on that point, for the purpose of showing that so far as there is any difference between a condition precedent and a condition subsequent the eleventh finding of fact is unsupported by evidence.

The finding is that the plaintiffs received the mortgage with the condition that the same should not be enforced "except upon the payment by the plaintiffs to the defendant D. A. Phillips of the sum of $250," while the only evidence which tends to sustain such finding is that of Mr. Phillips himself in the following language: "The proposition was that the money was to be sent. If the money was not sent the notes and mortgage were to be returned."

I think that there is a clear distinction between the two propositions, and that under the testimony the plaintiffs by virtue of the mortgage became vested of security for their debt, but at the same time they became legally bound to pay the defendant Phillips $250, or relinquish and return the said security. It was the right of said defendant to stand upon and enforce this obligation on the part of the plaintiffs. Had he done so it might have become the somewhat difficult duty of the courts to decide as to what measure of relief was available to him. But he did not elect to avail himself of this right.

In examining this question it will be well to bear in mind that proposition which has been so often adher-

ed to by this court, that "a mortgage security is a mere incident to the debt." The last clause of the 4th finding, which is in the following words, "and that the promise of the $250 was the sole moving cause and consideration for the making of the mortgage," is not only unsupported by the evidence in the case but is inconsistent with the third finding. The obtaining of the $250 may have been the "moving cause" which induced the said defendant to give the mortgage, but it was not "the sole consideration." According to his own testimony he was indebted to the plaintiffs in a large sum of money, nearly all of which was past due and which he was unable to pay. By giving the mortgage he got an extension of time on said indebtedness which the law makes a good consideration for a contract.

From the findings of fact, as well as from the evidence, it appears that Phillips owed the plaintiffs $539.25; their agent agreed to lend them $250, making $789.25. For this amount the said defendant, on the fourteenth of March, 1876, executed his three notes for $200 each, payable respectively in six, nine, and twelve months from said date, and one note for $189.25, due in fifteen months from date, and secured them by the mortgage in controversy. On the twenty-third of the same month, the plaintiffs wrote to Phillips refusing to loan him the $250. On the next day, March 24th, Phillips answered said letter of the plaintiffs, complaining of their treatment, urging them to comply with the agreement of their agent and send him the $250, and—I quote from the letter, "if you cannot do as I expected, you will please return the notes I gave him and the mortgage, for I will be compelled to raise money by that means, and if I give security I would not like to give it for more than I owe my creditors." On the twenty-eighth, the plaintiffs answered

the above letter, again declining to send him the $250, explaining why they could not, and urging him to pay a part of his indebtedness to them. I quote from their letter: "We request you again to send us, if possible, some money, for we really need it very much. As for having more notes than you owe us, please borrow no trouble on that account, and be assured we do not want any more than is due us. If you could send us, say $200, now, and secure us otherwise for the balance, even on a reasonably long time, we would willingly relinquish all other claims against you."

The next communication between the parties was a letter from the defendant, D. A. Phillips, to the plaintiffs, dated Fairmont, Aug. 12, 1876, of which the following is a copy:

" *Westheimer Bros., St. Joe, Mo.:*

"Dear Sirs—Will you please send notes and mortgages held by yourself against me to Eller & Co., at this place, for their inspection, or to W. R. Gaylord, Not. Pub., here, or to any person you may pick to suit yourselves. It will greatly oblige me. Please see that I have my proper credit of $250, or $62.50 on each note. You may send by registered letter. The object of the party who wishes to see them is to see if the proper credit is or is not on them. The county records show all, and they are not satisfied with my receipt from your agent.                    · Truly yours,

"D. A. PHILLIPS."

The next and only other letter between the parties, as shown by the record, was also written by the defendant, D. A. Phillips, to the plaintiffs, and which I also copy:

"FAIRMONT, NEB., March 1, 1877.
" *Westheimer Bros., St. Joe, Mo.:*

"Dear Sirs—Please find enclosed draft in your favor

for eighty-five dollars. Please credit on the note you hold against me for this amount, and oblige.

"Truly yours,

"D. A. PHILLIPS."

It satisfactorily appears from the evidence that previous to the date of the above letter, the two original notes which the plaintiffs held of the defendant Phillips had been given up to him, so that the notes secured by the mortgage in controversy were the only notes of Phillips which the plaintiffs then held.

It also appears, as well from the evidence as from the eighth finding of fact by the district court, that on the twelfth day of December, 1876, the defendant Phillips had paid to the plaintiffs' agent the sum of fifty-five dollars on one of the notes secured by the said mortgage.

I conclude, therefore, that although the plaintiffs had retained the new notes and mortgage contrary to the agreement between their agent and the defendant, D. A. Phillips, yet that said defendant finally acquiesced in such retention, and by accepting the said original notes from the plaintiffs, making two payments on the new notes, and demanding that the $250—which the said notes contained, above what he actually owed the plaintiffs, being the amount which their agent promised but which they refused to advance to him—be divided into four equal parts, and one part thereof endorsed on each of the said four notes, he waived his right to insist upon the return of the said notes and mortgage, or either of them.

No case is cited by counsel, nor am I able to find one in which a debt, being admitted or proved a security therefor, has been adjudged void, in an action between the parties giving and receiving such security. Nearly all of the cases cited are controversies between mortgagees and other creditors of the mortgagor, and

the question has been whether the delivery of the note and mortgage was absolute or in escrow.. And it is not too much to say that in none of them, where the delivery has been held to be in escrow, are the facts such as to bring them within the principles of the case at bar. I am therefore of the opinion that the decree of the district court be reversed and the cause remanded to the district court, with directions to enter a decree of foreclosure in accordance with this opinion.

REVERSED AND REMANDED.